UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-CV-23843-GAYLES/Otazo-Reyes

ANDRES GOMEZ, Individually,

    Plaintiff,
vs.

THE KNIFE MANAGEMENT, LLC d/b/a
THE KNIFE STEAKHOUSE, a Florida
Limited Liability Company, and CARMA,
LLC, a Florida limited liability company,

    Defendant.
_____/

### DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS PLAINTIFF'S 2d AMENDED COMPLAINT

Defendants, Knife Management, LLC d/b/a The Knife Steakhouse, a Florida limited liability company ("Knife"), and CARMA, LLC, a Florida limited liability company ("Carma"), by and through its undersigned attorneys, respectfully moves to dismiss the 2d Amended Complaint filed by Plaintiff, Andres Gomez, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In support of this Motion, Defendant states as follows:

1. On October 19, 2017, Plaintiff filed this action against Defendant, seeking declaratory and injunctive relief, along with attorneys' fees, damages, costs and other expenses, for alleged violations of Title III of the Americans with Disabilities Act 42 U.S.C. §§12181-12189 ("ADA") and 28 C.F.R. §36.201 (Count I) (DE – 1).

2. On September 14, 2018, this Court entered an Order (DE – 44) granting Defendants' Motion to dismiss without prejudice.

3. On October 10, 2018, the Plaintiff filed its Second Amended Complaint again seeking declaratory and injunctive relief, along with attorneys' fees, damages, costs and other

expenses, for alleged violations of Title III of the Americans with Disabilities Act 42 U.S.C. §§12181- 12189 ("ADA") and 28 C.F.R. §36.201 (Count I) (DE – 45).

4. Plaintiff claims that Defendant's website is inaccessible to the visually impaired. (DE – 45, ¶¶10-11).

5. Count I of the Complaint fails to state a claim upon which relief can be granted for any alleged violation of the ADA. Defendant's website is not a physical, concrete structure, as required to state a claim under Title III of the ADA. Moreover, there is no basis to expand the ADA's application to Defendant's website because the nexus required to do so has not been alleged in the Complaint. Accordingly, Count I of Plaintiff's Complaint fails to state a claim for a violation of the ADA, and Count I should be dismissed.

6. The 2d Amended Complaint is identical to the 1st Amended Complaint dismissed by this Court with the exception of the following language which was added:

> The following sentences were added to Paragraph 5 (starting with 5th sentence):
>
> "Plaintiff intended to visit one of Defendants' restaurants, but the failure of the website to be readable with screen reader software impeded his ability to do so. The website provided information about restaurant locations and made it possible to make reservations. Moreover the website contained menu information. Thus, the website serves as a gateway to the restaurant by providing the means to book a table, information about the food and a means of ascertaining the location of the nearest restaurant."
>
> (Continuing after 8th sentence):
>
> "The failure to make this information available to vision impaired individuals impeded Plaintiff's ability to locate the physical store, let alone book a table or have advance information about the menu for purposes of making a meaningful choice."
>
> The following was added to Paragraph 10 (added after sole existing prior sentence in the block indented paragraph):

> "As a result, the website acts as an intangible barrier, preventing the Plaintiff, and others who are similarly situated, from enjoying the following benefits of The Knife's physical stores: access to the location of the restaurants, including which restaurant is nearest or more convenient to the Plaintiff; the ability to obtain gift cards or coupons to be applied to purchases; the ability to obtain information about food items or to book a table at a designated restaurant of Plaintiff's choice."

7. These additions attempt to allege that Plaintiff has standing to bring this claim. However, the allegations are merely conclusions. For instance, they suggest that the Plaintiff "intended" to visit the restaurant, and claim in a conclusory manner that the website did not permit him to do so. The allegation does not, however, allege specifically how it prevent him from doing so, and does not address that the information on the website is available throught multiple other means. See, discussion *infra*.

8. But most fundamentally, the 2d Amended Complaint fails to allege how the Defendant's website fails to meet accessibility standards. The reason for this is simple. There are no such standards. The ADA does mandate accessibility standards for websites, and despite over 8 years to do so, the U.S. Department of Justice has failed to issue any accessibility standards for websites. Therefore, Plaintiff cannot point to specifically deliniated legal standards for a website to be deemed accessible.

9. Instead, Plaintiff alleges that the website is in accessible because it is not compatible with his chosen screen reader software (called an SRS in the 2d Amended Complaint). See 2d Amended Complaint at ¶2. The Plaintiff's own allegation admits that there are other SRS programs available. *Id.* ("… Plaintiff uses the JAWS Screen Reader software, which is *one of* the most popular Screen Reader Software ("SRS") utilized worldwide).

10. The 2d Amended Complaint also fails to allege what computer platform the

3

Plaintiff used (Windows versus Macintosh), which version of the operating system for each platform he used, or even what web browser software the Plaintiff used, and is utterly silent as to whether or not the Defendant's website might be fully accessible under any of all the available platforms.

11. In the absence of specific accessibility rules or guidelines, the Plaintiff's allegations are deficient because Plaintiff elected a means of access and didn't work, but has not alleged that other equally available means of access are also inaccessible.

12. This when taken together with the fact that the ADA does not require a place of public accommodation to maintain even have a website, falls short of demonstrating that Defendants have discriminated against the visually impaired.

13. Further, the website was created and is owned by Defendant, Carma, LLC. 2d Amended Complaint at ¶5. Other than a superficial allegation that the other Defendant Knife Management (which operates a brick and mortar restaurant) is an affiliate of Carma, the Complaint fails to allege how the place of public accommodation (the restaurants) have any control over Defendant Carma or the website. *Id.* A naked allegation that Defendant Knife "directs" the maintenance and updates to the website is merely an improper legal conclusion unsupported by any factual allegations sufficient to overcome a motion to dismiss.

14. Accordingly, Plaintiff's Complaint should be dismissed in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS PLAINTIFF'S COMPLAINT

### THE COMPLAINT

Plaintiff's Complaint purports to be an action for declaratory and injunctive relief pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA") and 28 C.F.R. §36.201 (Count I) (DE – 45, ¶18, 19, ad damnum ). Plaintiff also seeks "reasonable attorney's fees, damages, all costs …, and other expenses of suit … ." (DE – 45, 18, 20).

Plaintiff alleges that he is legally blind and a member of a protected class under the ADA. (DE – 45, ¶1). He cannot use the computer without the assistance of a screen reader software. (DE – 45, ¶2). Plaintiff uses commercially available screen reader software to interface with various websites. (DE – 45, ¶2).

According to Plaintiff's allegations, one of the functions of Defendant's website is to provide the general public information on the various goods, services, accommodations, privileges and facilities available to patrons. (DE – 45, ¶5).

All the complaint does is, in conclusory fashion, assert that Defendant's website "supports, is an extension of, is in conjunction with, is complementary and supplemental to, the above-referenced public accommodation." (DE-45, ¶5).  As such, Plaintiff alleges the website is governed by 42 U.S.C. 12182. (DE – 45, ¶8).  To support this Plaintiff cites to general provisions of the ADA applicable to places of public accommodation, but fails to actually allege that the website itself is a place of public accommodation.

## ARGUMENT

**I.    RULE 12(b)(6) STANDARDS**

For purposes of a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept as true the facts as set forth in Plaintiff's Complaint and draw all reasonable inferences in Plaintiff's favor. *Nettles v. City of Leesburg – Police*

*Department*, 415 Fed. Appx. 116, 120 (11th Cir. 2010). The Complaint need only contain a short and plain statement of the claim showing that Plaintiff is entitled to relief. While Plaintiff's Complaint does not need detailed factual allegations, Plaintiff has an obligation to provide the grounds of his entitlement to relief, and that obligation requires more than labels and conclusions or a formulaic recitation of the elements of a cause of action. *Id*. (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1995, 167 L. Ed. 2d 929 (2007)). Factual allegations must be enough to raise a right to relief above the speculative level. *Nettles*, 415 Fed. Appx. at 120 (citing *Twombly*, 550 U.S. at 555).

Even accepting Plaintiff's allegations as true along with all reasonable inferences,[1] Plaintiff has failed to state a claim in his Complaint upon which relief can be granted.

**II.   COUNT I OF THE COMPLAINT ALLEGING VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

In Count I of his Complaint, Plaintiff claims – despite never having patronized the Defendant's restaurant or even claiming to want to do so in the future – that Defendant is depriving Plaintiff and others similarly situated "of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of its place of public accommodation" and other allegedly different or lesser treatment in derogation of 42 U.S.C. §12101 et. seq., and as prohibited by 42 U.S.C. §12182 et seq." (DE – 45, ¶11). Plaintiff, who labels himself a "tester" and is a serial filer of ADA complaints such as the one in this Case, has previously had Courts in this District explain the reach of Title III of the Americans with

---

[1] Defendant is constrained within the context of this motion to dismiss to argue the "facts" as alleged by Plaintiff. Defendant disputes the facts alleged in the Complaint, and nothing herein should be interpreted as Defendant's acceptance of Plaintiff's claims or material allegations.

Disability Act as it applies to websites. *See, e.g.*, *Gomez v. Bang & Olufsen America, Inc.*, 2017 WL 1957182 (S.D.Fla. Feb. 2, 2017)(dismissing complaint without prejudice for failure to allege nexus between website and access to physical location of place of public accommodation; plaintiff must claim an actual (not hypothetical) impediment to use of physical retail location caused by the website); and *Gomez v. La Carreta Enterprises, Inc.*, Case. No. 17-61195-CIV-DIMITROULEAS (S.D.Fla. Dec. 7, 2017)(dismissing with prejudice for failure to link website to access to physical location of a place of public accommodation).  Notwithstanding this, in the present complaint there is no nexus alleged linking the website to the Defendant's physical locations.  The restaurants (which Plaintiff does not allege are the same as the entity that owns and maintains the website) do not sell food through the website.  Plaintiff mentions access to making reservations for the restaurant through the website, and sale of gift cards, but not allege that he tried to do either and was unable to do so.  Moreover, the Plaintiff does not even allege that the website was completely inaccessible to him, only that the website was not fully accessible.  Plaintiff cites to no legal benchmark standard for accessibility, nor a specific percentage of accessibility that would be accessible.  Again, this is in part because no such standard exists in the statute or regulations implementing the ADA.

Title III of the Americans with Disabilities Act ("ADA") prohibits discrimination against individuals with disabilities in a "***place of public accommodation***." 42 U.S.C. §12182(a) (emphasis added). Plaintiff cites no existing statute or regulation that supports his application of the requirements of Title III of the ADA to Defendant's website here.[2]

To state a claim for relief under Title III, a plaintiff must plausibly allege, first, that he is disabled within the meaning of the ADA; second, that the defendant is a private entity that owns,

---

[2] The Department of Justice ("DOJ") has not yet issued guidance on Title III of the ADA.

leases, or operates a place of public accommodation; and, third, that because of his disability the plaintiff was denied full and equal enjoyment of the public accommodation by the defendant. *Gomez v. Bang & Olufsen America, Inc.*, No. 16-cv-23801, 2017 WL 1957182, at *2 (S.D. Fla. Feb 2, 2017); *see Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 151 (D.C. Cir. 2015) (per curiam); *Arizona ex rel. Goddard v. Harkins Amusement Enters., Inc.*, 603 F.3d 666, 674 (9th Cir. 2010); *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 151 (D.C. Cir. 2015) (per curiam); *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008) (per curiam).

Title III sets forth a "comprehensive definition of 'public accommodation,'" *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 667 (2001), in which a private entity is covered "if the operations of such entit[y] affect commerce" and the entity fits into one of the statute's 12 enumerated sets of categories. *See* 42 U.S.C. § 12181(7). Websites are not an enumerated category.

The ADA delegates authority to the Attorney General to issue regulations to carry out the provisions of Title III. *See id.* § 12186(b). However, rules concerning website accessibility have not been promulgated, and to date, neither the Supreme Court nor any of the Circuit Courts of Appeal have addressed the issue head on. It should be noted, however, that the question of whether Title III even applies beyond physical spaces and into cyberspace requires that one "wad[e] into a thicket of a circuit split." *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1334 (11th Cir. 2004). Decisions of the Third, Fifth, Sixth, and Ninth Circuits suggest that Title III's coverage is limited to physical spaces. *See Ford v. Schering-Plough Corp.*, 145 F.3d 601, 613-14 (3d Cir. 1998); *Magee v. Coca-Cola Refreshments USA, Inc.*, 833 F.3d 530, 534-36 (5th Cir. 2016), *cert. denied*, 2017 WL 4339924 (U.S. Oct. 2, 2017); *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1014 (6th Cir. 1997); *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114-15 (9th Cir. 2000). By contrast, the First, Second, and Seventh Circuits have held

that Title III does not always require a connection to a physical space. *See Carparts Distribution Ctr., Inc. v. Auto. Wholesaler's Ass'n of New England, Inc.*, 37 F.3d 12, 18-20 (1st Cir. 1994); *Pallozi v. Allstate Life Ins. Co.*, 198 F.3d 28, 31-33 (2d Cir. 1999); *Morgan v. Joint Admin. Bd.*, 268 F.3d 456, 459 (7th Cir. 2001).

The Eleventh Circuit has established a rule that is somewhere in the middle of these other Circuits. In *Rendon v. Valleycrest Productions, Ltd.*,[3] a telephone selection process that allegedly screened out disabled contestants from aspiring to compete on the show *Who Wants To Be a Millionaire?* was covered by Title III. 294 F.3d 1279 (11th Cir. 2002). In reaching this conclusion, the Court reasoned that the ADA's plain text "reveals that the definition of discrimination provided in Title III covers both tangible barriers, that is, physical and architectural barriers that would prevent a disabled person from entering an accommodation's facilities and accessing its goods, services and privileges, and intangible barriers, such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the defendant entity's goods, services and privileges." *Id.* at 1283 (citations omitted). Even though *Rendon* concluded that Title III can extend to non-physical spaces, it does not establish that a virtual space like a website is necessarily covered, especially when the claimed denial of equal access is altogether unmoored from a physical space.

> District courts within the Eleventh Circuit that have considered the question of whether websites are public accommodations have uniformly held that the ADA does not apply to a website that is wholly unconnected to a physical location. However, district courts in the Eleventh Circuit have found that websites are subject to the ADA if a plaintiff can establish a nexus between the

---

[3] *Rendon* is the only recent published opinion from the Eleventh Circuit on this matter. While the Eleventh Circuit did issue a decision in *Haynes v. Dunkin Donuts, LLC*, --- Fed. Appx. ----, 2018 WL 3634720 (11th Cir. July 31, 2018), that decision was not selected for publication and is not considered binding precedent. See, 11th Cir. R. 36-2. Defendants believe that *Haynes* is distinguishable and due to its lack of precedential value should not apply in this case.

website and the physical premises of a public accommodation.

*Gil v. Winn Dixie Stores, Inc.*, 242 F. Supp. 3d 1315, 1320 (S.D. Fla. 2017) (citations omitted). *See., e.g., Bang & Olufsen*, 2017 WL 1957182, at *4 ("[T]he ADA does not require places of public accommodations to create full-service websites for disabled persons. In fact, the ADA does not require a place of public accommodation to have a website at all. All the ADA requires is that, if a retailer chooses to have a website, the website cannot impede a disabled person's full use and enjoyment of the brick-and-motar [*sic*] store.").

In *Access Now, Inc. v. Southwest Airlines Co.*, 227 F. Supp. 2d 1312 (S. D. Fla. 2002), the court addressed the question "whether Title III of the ADA mandates that Internet website operators modify their sites so as to provide complete access to visually impaired individuals." *Id*. at 1315. More specifically, the District Court in *Access Now* considered: "whether Southwest's website, southwest.com, is a place of public accommodation as defined by the ADA, and if so, whether Title III of the ADA requires [defendant] to make the goods and services available at its 'virtual ticket counters' accessible to visually impaired persons." *Id.* The District Court noted that no court in the Eleventh Circuit has squarely addressed this issue *Id.*

Like Plaintiff in the case before this Court, in *Access Now* the Plaintiffs alleged that Southwest's technology violated the ADA because the goods and services offered on its website were inaccessible to blind persons using a screen reader and otherwise failed to allow access to blind consumers. *Id.* at 1316. In analyzing "whether an Internet website … is a 'place of public accommodation,'" the District Court determined that the issue was a question of statutory construction, requiring that the court apply the plain language of the statute. *Id.* at 1317. The court then noted that the ADA "specifically identifies twelve (12) particularized categories of

'places of public accommodation.'" *Id.* After setting forth the twelve enumerated categories, the *Access Now* Court held:

> Here, to fall within the scope of the ADA as presently drafted, a public accommodation must be a physical, concrete structure. To expand the ADA to cover "virtual" spaces would be to create new rights without well-defined standards. *Id.* at 1318.

The *Access Now* Court rejected the plaintiffs' argument that Southwest's website is a place of public accommodation and falls within the scope of Title III. *Id.* at 1317, 1319.

The *Access Now* Court also rejected the plaintiffs' argument that the court should expand the ADA's application into cyberspace, as other Circuit Courts have done, finding that the Eleventh Circuit has not read Title III of the ADA as broadly as those other courts. *Id.* at 1319.

As a result, the *Access Now* Court went on to find that, unlike the fast finger telephone selection process *used to select contestants* to participate in a television game show in a physical, concrete television studio *that tended to screen out* disabled individuals, the "public website at issue here is neither a physical, public accommodation itself as defined by the ADA, nor a means to accessing a concrete space such as the specific television studio in *Rendon*." 227 F. Supp. 2d at 1321. Consequently, the *Access Now* Court ruled that the plaintiffs there "are unable to demonstrate that Southwest's website **impedes their access to a specific, physical, concrete space** such as a particular airline ticket counter or travel agency." *Id.* at 1321 (emphasis added). "Having failed to establish a nexus between southwest.com and a physical, concrete place of public accommodation, Plaintiffs have failed to state a claim upon which relief can be granted under Title III of the ADA." *Id.*

In the case before this Court, Plaintiff does not – and cannot – allege that Defendant's website specifically intends to discriminate against the visually impaired. The Complaint fails to allege that Defendant's website in any way selects customers or screens out disabled

individuals as in *Rendon*. *Id.* There is no claim that, as a result of the alleged deficiencies with Defendant's website, Plaintiff has in any way been denied access to any one of Defendant's physical, concrete locations. There is no allegation that information on Defendant's website concerning Defendant's locations, menu information, or the ability to make a reservation at a physical, concrete location prevents Plaintiff from obtaining this information or making an reservation through other means, such as visiting or telephoning a restaurant location.

Thus, Defendant's website is not a physical, concrete structure, as required to state a claim under Title III of the ADA. *Access Now*, 227 F. Supp. 2d at 1318. Moreover, there is no basis to expand the ADA's application to Defendant's website because the required nexus, as articulated by the Court in this District has not been alleged in the Complaint. Accordingly, Plaintiff's 2D Amended Complaint fails to state a claim for the violation of the ADA, and should be dismissed.

## **CONCLUSION**

For all of the foregoing reasons, Defendant requests that this Court grant Defendant's Rule 12(b)(6) Motion to Dismiss Plaintiff's Complaint and dismiss the Complaint.

WHEREFORE, Defendant respectfully requests that this Court:

(i) grant this Motion;

(ii) dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; and

(iii) grant such further relief to Defendant as this Court deems to be just and appropriate.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed and served via CM/ECF on this 2nd day of November, 2018 upon Thomas B. Bacon, Esq., (E-Mail: tbb@thomasbaconlaw.com) Thomas B. Bacon, P.A., 644 N. Mc Donald St., Mt. Dora, FL 32757; and Kathy L. Houston, Esq., (E-Mail: courtdocs@houstonlawfl.com) Houston Law Firm, P.L., 15321 S. Dixie Hwy., Suite 205, Miami, FL 33157.

> LAW OFFICES OF JONATHAN A. HELLER, P.A.
> One Flagler Building
> 14 Northeast First Avenue
> Suite 1105
> Miami, Florida  33132
> Telephone No.: (305) 372-5000
> E-Mail: Jonathan@jhellerlaw.com
> By:   /S/ JONATHAN A. HELLER, ESQ.
>           JONATHAN A. HELLER, ESQ.
>           Florida Bar No. 340881